ESTATE OF RICHARD B. BAUMGARDNER, JUNE BAUMGARDNER GELBART (FORMERLY JUNE E. BAUMGARDNER), PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7435–81.    Filed September 11, 1985.

*Joe R. Wolfe*, for the petitioner.
*Keith H. Johnson*, for the respondent.

## OPINION

GERBER, *Judge*:* Respondent, in a January 9, 1981, statutory notice, determined a deficiency in petitioner's Federal estate tax in the amount of $186,705. The parties now agree that petitioner is entitled to an overpayment, but disagree about the composition and amount of the overpayment. After resolution of other issues by the parties, the following issues[1] remain for our consideration: (1) Whether an overpayment of estate tax, within the meaning of section 6512(b),[2] may include the overpayment of amounts originally paid as tax and interest by means of section 6166A installment payments; and (2) whether respondent properly allocated petitioner's section 6166A installment payments between principal and interest.

The central dispute in this case involves whether interest may be considered a part of an "overpayment" and whether the Tax Court has jurisdiction to review the amount of said interest. With limited exceptions (mostly statutory), this Court has declined to consider questions concerning interest in connection with deficiencies and overpayments. Petitioner has requested that we consider questions of interest in the limited situations where, as here, interest has been overpaid on section 6166A installment payments. Unless there is a clear jurisdictional prohibition or inability, it would be most unjust to require petitioner to seek an overpayment of the tax in this forum and an overpayment of the interest in another. After carefully considering petitioner's and respondent's arguments, we conclude that we possess jurisdiction to determine the amount of interest paid on estate tax installments as part of an overpayment of estate tax.

## Facts

The parties have submitted this case fully stipulated and their stipulation of facts and exhibits are incorporated by this reference. Richard B. Baumgardner died on October 16, 1976.

---

*By order of the Chief Judge, this case was reassigned from Judge Lapsley W. Hamblen, Jr., to Judge Joel Gerber for disposition.

[1]Petitioner has objected to the relevancy of a transcript of its account from respondent's records. This matter is addressed in the body of this opinion.

[2]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the year at issue.

A Federal estate tax return was filed with the Atlanta Service Center on January 17, 1978, within an extended filing period granted by the Internal Revenue Service (Service). With its return, the estate filed a notice of its election to pay the estate tax in installments pursuant to section 6166A.[3] The Service sent detailed bills to the estate specifically reflecting the Service's allocations of the required payments into tax (principal) and interest. The estate, without exception or qualification and pursuant to the billings, made the payments to the Service. The following schedule reflects the amount and date of the payments and the Service's allocation between principal and interest:

| Date | Payment | Allocation to principal | Allocation to interest |
|------|---------|-------------------------|------------------------|
| July 20, 1977 | $450,000.00 | $450,000.00 | 0 |
| July 17, 1978 | 107,693.56 | 69,563.98 | $38,129.58 |
| July 13, 1979 | 100,272.26 | 69,434.00 | 30,838.26 |
| July 17, 1980 | 108,273.13 | 69,434.00 | 38,839.13 |
| July 15, 1981 | 114,446.36 | 69,434.00 | 45,012.36 |
| Feb. 12, 1982 | 305,669.02 | 305,669.02 | 0 |
| June 1, 1982 | 22,008.17 | 0 | 22,008.17 |
| Total | 1,208,362.50 | 1,033,535.00 | 174,827.50 |

The Federal estate tax return, received by the Service on January 17, 1978, reported $1,033,535 in estate tax. In a January 9, 1981, statutory notice of deficiency, respondent determined a deficiency in Federal estate tax in the amount of $186,705. The estate, by its personal representative (June Baumgardner Gelbart, widow of decedent), filed a timely petition with this Court. At the time of filing the petition, the personal representative's residence and the estate's address were both in the State of Florida. After the case had been petitioned to this Court, the parties settled all of the issues set forth in the notice of deficiency. The settlement resulted in the elimination of the entire amount determined as a deficiency and further reduced the amount of estate tax due to $938,215.07, which amount was $95,319.93 less than the amount originally returned by the estate.

---

[3]Although the parties stipulated that petitioner elected installment payments under sec. 6166, petitioner's election was made at a time when only sec. 6166A was available for estates of decedents who died before Jan. 1, 1977. It appears from the record that respondent treated petitioner's election as having been made under sec. 6166A.

Petitioner maintains that the overpayment should be $141,224.63, which takes into account interest overpaid on the section 6166A installments. Respondent maintains that the overpayment should be limited to $95,319.93, the difference between the amount of tax returned ($1,033,535) and the amount of tax the parties agree is due ($938,215.07).

## Legal Analysis

### "Overpayment" Within the Meaning of Section 6512(b)

Although the parties disagree about the amounts and remedies available, they agree that there is an overpayment of estate tax and interest on that estate tax. Respondent argues that this Court lacks jurisdiction to decide issues concerning interest. His argument suggests that petitioner, if not barred by expiration of the period of limitation on filing a claim, must bring a separate action in a district court or the Claims Court in order to obtain a refund of overpaid interest. Petitioner contends that where the interest is a part of the overpayment, this Court may hold that interest has been overpaid. Where, as here, an estate makes installment payments pursuant to section 6166A and those payments are broken into tax (principal) and interest and paid prior to our determination, an exceptional situation is presented.

Our jurisdiction is limited by statute (section 7442) and is confined to a determination of the amount of a deficiency or overpayment for the particular tax year in which the Commissioner determines a deficiency and in which the taxpayer petitions for a review. *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418, 420 (1943). More specifically, our jurisdiction to determine an overpayment of estate tax is rooted in section 6512(b). The pertinent parts of section 6512(b) provide:

SEC. 6512(b). OVERPAYMENT DETERMINED BY TAX COURT.—

(1) JURISDICTION TO DETERMINE.—Except as provided by paragraph (2) * * * if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment * * * of estate tax in respect of the taxable estate of the same decedent, * * * the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

(2) LIMIT ON AMOUNT OF CREDIT OR REFUND.—No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid—
    (A) after the mailing of the notice of deficiency,
    (B) within the period which would be applicable under section 6511(b)(2),
* * * if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, * * *

Section 6512(b) provides that the Tax Court has jurisdiction over "an overpayment * * * of estate tax." The Tax Court has jurisdiction to determine the amount of such overpayment, and such amount shall be credited or refunded to the taxpayer when the decision of the Tax Court becomes final. The Tax Court has jurisdiction to determine an overpayment under section 6512(b)(2)(A) if petitioner pays the amount in question after the mailing of the notice of deficiency. This Court also has jurisdiction to determine an overpayment under section 6512(b)(2)(C) if petitioner has in fact filed a claim for refund of tax paid. Finally, this Court has jurisdiction to determine an overpayment under section 6512(b)(2)(B) if petitioner could have timely filed a claim on the mailing date of the deficiency notice even though petitioner had not in fact filed a claim for refund for tax paid. While the Tax Court has jurisdiction to determine an overpayment, the term "overpayment" is not defined. We must determine whether the use of "estate tax" in section 6512(b) limits our jurisdiction to overpayments of tax alone or whether a broader meaning is intended to permit consideration of overpayments of interest.

The absence of a statutory definition of "overpayment" leads us to search other sources. Section 6401 contains a description of certain specific items that are statutorily treated as overpayments.[4] These classifications do not provide the basis for a definition. The Supreme Court, in deciding whether the refund of an erroneous or illegal assessment was subject to

---

[4]SEC. 6401. AMOUNTS TREATED AS OVERPAYMENTS.

  (a) ASSESSMENT AND COLLECTION AFTER LIMITATION PERIOD.—The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after expiration of the period of limitation properly applicable thereto.

  (b) EXCESSIVE CREDITS.—If the amount allowable as credits under sections 31 (relating to tax withheld on wages), and 39 (relating to certain uses of gasoline, special fuels, and lubricating oils), exceeds the tax imposed by subtitle A (reduced by the credits allowable under subpart A of part IV of subchapter A of chapter 1, other than the credits allowable under sections 31 and 39), the amount of such excess shall be considered an overpayment.

the same statutory period of limitations as other claims for refund of an overpayment, provided the following definition of an "overpayment:" *"any payment in excess of that which is properly due."* (Emphasis supplied.) *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947). The *Liberty Glass Co.* generic definition of "overpayment" is in reference to section 322 of the Internal Revenue Code of 1939. Section 322(d) of the Internal Revenue Code of 1939, in pertinent part, included the following language which is substantially similar to its successor, section 6512(b): "If the [Tax Court] finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax * * *, the [Tax Court] shall have jurisdiction to determine the amount of such overpayment."

Congress, in providing for interest on underpayments in section 6601(a) also provided in section 6601(e) that "Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." It would appear that the major purpose of the language treating interest and tax the same is to provide the Government with administrative tools to demand payment, assess, and collect the interest in the same manner that has been provided for the tax. Although section 6601(e) reflects the need in appropriate circumstances to avoid unnecessary distinctions between the terms "tax" and "interest," we are not able to find the reference in section 6601(e) directly controlling with respect to section 6512(b). It should be noted that substantially identical language has been used with respect to additions to tax.[5] Accordingly, a restrictive reading of the word "tax" in section 6512(b) would place a limitation upon our overpayment jurisdiction concerning both interest and additions to tax. It should be noted that section 6512(b) is not within subchapter B of chapter 63 of the Internal Revenue Code of 1954 and, accordingly, could be interpreted to be within the ambit of section 6601(e).

When reading section 6512(b), some consideration of its symmetry in conjunction with section 6512(a) is unavoidable.

---

[5]SEC. 6662. APPLICABLE RULES.

(2) Any reference to this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter. * * * [Enacted by Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172.]

Under section 6512(a), a U.S. District Court or the Claims Court has no jurisdiction over a refund suit brought by a taxpayer who has previously petitioned the Tax Court, until such time as the Tax Court's decision is final. This is so even though an overpayment results. See *United States v. Wolf*, 238 F.2d 447 (9th Cir. 1956). Accordingly, there is a clear statutory intent that, in appropriate circumstances, the Tax Court should be able to determine an overpayment to the exclusion of other tax forums. This intent would be frustrated by a reading of sec. 6512(b) that limits the Tax Court's jurisdiction to determining an "overpayment" which varied from "overpayments" that the excluded forums could have found.

In appropriate circumstances, courts may inquire into the legislative purposes even where a statute appears clear on its face. *United States v. American Trucking Associations*, 310 U.S. 534, 543–544 (1940); *J.C. Penney Co. v. Commissioner*, 312 F.2d 65, 68 (2d Cir. 1962), affg. 37 T.C. 1013 (1962); *Carasso v. Commissioner*, 34 T.C. 1139, 1142 (1960), affd. 292 F.2d 367 (2d Cir. 1961). Such inquiry appears particularly appropriate in this case because of the incongruity in the related statutory provisions, established principles concerning overpayments in forums other than the Tax Court, and the acute injustices to petitioner if we do not seek to find harmony in the statutory network.

In the structural sense, the tax code contains provisions for interest on underpayments (deficiencies) and overpayments (refunds). But there are no specific provisions for interest which is a part of an overpayment. The Treasury Department in its interpretation and expansion of the congressional mandate of section 6611 (which provides for interest on overpayments) has treated interest and tax as elements or parts of an "overpayment" upon which interest shall be allowed. Section 301.6611–1(b), Proced. & Admin. Regs., in pertinent part, provides:

there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to the previous payments) is in excess of the tax liability (including any interest, addition to the tax, or additional amount) * * *

In subpart (c) of the same regulation, two examples of assessments, payments, and resulting overpayments are provided. The second example involves a situation where a deficiency had been assessed against a corporate taxpayer and interest had been paid upon the deficiency. In delineating the amounts and dates of overpayments, the regulation states that "The amount of any interest paid with respect to the deficiency * * * is also an overpayment."

As a practical matter, this Court would find it difficult to exercise jurisdiction over interest upon a deficiency. Interest does not accrue upon a deficiency, but only upon the existence of an underpayment. Sec. 6601. In order for a deficiency or tax to be unpaid, the amount must be assessed or assessable. Section 6213 limits the ability of respondent to assess a deficiency until the decision of the Tax Court becomes final. Accordingly, as a practical matter, we would have logistic difficulty exercising jurisdiction over interest on an unpaid and unassessed deficiency.

The statutory framework concerning interest in connection with overpayments is more complex than that concerning underpayments. Generally, jurisdiction concerning overpayments rests with the U.S. District Courts and the U.S. Claims Court. Under limited circumstances, the U.S. Tax Court may acquire overpayment jurisdiction. The Tax Court's overpayment jurisdiction is limited to situations where a deficiency has been determined and the taxpayer petitions this Court for a taxable period. In those situations, the "overpayment" determined by the Tax Court should be synonymous with that determined by a district court or the Claims Court. This is essential because a determination of an overpayment, by any of the three forums, is res judicata. Further complicating this overlapping jurisdiction are the multiple roles that interest may play in relation to an overpayment.

Interest may be part of an overpayment if the interest accrued and was paid prior to the time the overpayment was claimed or arose. This is the type of interest we are considering in this case. Once an overpayment has been determined, either by our Court or one of the "refund forums," interest accrues in accord with section 6611 until the time the overpayment is refunded or reduced to judgment. Once reduced to judgment, interest accrues on the judgment, inclusive of the overpay-

ment (which may include overpaid interest) and interest on the overpayment, all in accord with 28 U.S.C. sec. 2411 (1982). Because our jurisdiction is not derived from Title 28 of the United States Code, we remain unable to enter a decision for interest upon an overpayment. With respect to interest which is part of an overpayment, however, we must be able to determine all components of that overpayment or a taxpayer unwittingly may not be able to recover interest in those situations where the Commissioner initially determined a deficiency and the taxpayer petitioned to the Tax Court. If a taxpayer like petitioner has the option of petitioning the Tax Court, we must assume that Congress intended the Tax Court to have jurisdiction over all components of an overpayment. To assume otherwise would be to presume that a taxpayer could foresee, during deficiency procedures under section 6211 et seq., that he would ultimately end up with an overpayment under section 6512(b) and, prior to the expiration of the statutory limit on the time to file a claim under sec. 6511, bring an action for the amount of interest overpaid. It would be difficult, if not impossible, for one to file a specific enough protective claim under these circumstances.[6] Lack of jurisdiction in this instance would leave taxpayers in a "catch-22" where interest was overpaid and the statute of limitations on claiming the interest had run. Surely Congress did not intend, by section 6512(b) and its predecessors, to expand this Court's jurisdiction to overpayments and, at the same time, create a situation where choice of this forum would provide such unfair results. This is especially so where, as here, there was no way for the taxpayer to predict an overpayment of tax or interest.

We turn now to section 6166A, a relief provision that allows certain estates to pay tax in installments. Petitioner-estate elected, and was permitted by the Service, to utilize the installment payment provisions of section 6166A. The interest upon installments may be deductible under section 2053(a)(2) and, if it is, results in a reduction of the taxable estate and a further need to reduce the amount of future installments under section 6166A. The Service, in Rev. Rul. 80–250, 1980–2 C.B. 278, in explaining when such interest is deductible, would permit a recomputation of the estate tax and previously

---

[6] In situations where deferred payments under sec. 6166 are involved, the possibility that such a claim, if determinable, could be timely made becomes more remote.

accrued interest. The ruling, however, notes that no refund will be made until the entire tax liability has been paid. Thus, this ruling implies that the Service would argue that this Court has no jurisdiction over such an "interest payment" but that the Service may administratively adjust and give credit for said amounts to the extent that they are deductible under section 2053(a)(2) without a countervailing ability of the taxpayer to question the Service's actions without paying the full amount of the tax. See also Rev. Rul. 81–294, 1981–2 C.B. 237, and Rev. Proc. 81–27, 1981–2 C.B. 548. Rev. Proc. 81–27 suggests in situations where the interest is deductible, that a supplemental Form 706 be filed but that it "will not be considered a claim for refund or abatement." Accordingly, the "catch-22" problem of no forum to recover interest that precedes an overpayment would continue to exist under respondent's rulings and procedures.

This Court has recognized that it cannot ignore issues concerning the interest and principal on deferred payments. In *Estate of Bahr v. Commissioner*, 68 T.C. 74 (1977), we considered the treatment of interest on deferred payments. Although the opinion did not resolve the question of whether interest may be part of an "overpayment" within the meaning of section 6512(b), it did analyze the interest amounts for purposes of their deductibility as administrative expenses of the estate. Continuing in that vein, this Court applied a statutory provision affecting the rate of interest on installment payments made under section 6166 in *Estate of Papson v. Commissioner*, 81 T.C. 105 (1983). In *Estate of Bailly v. Commissioner*, 81 T.C. 246 (1983), we held that an estate that had elected under section 6166 to defer payment of its estate tax liability could not deduct unaccrued interest on that liability as an administrative expense under section 2053(a)(2). Accordingly, in the more recent opinions, this Court has delved into the substantive aspects of "interest issues" where the interest has accrued and/or was paid prior to our determination of a deficiency.

If, in the instant case, we were required to determine which portion of petitioner's section 6166A installment payments constituted tax or principal as opposed to which portion constituted interest, we would, in effect, be within the holdings of our more recent opinions and would also determine that

some portion of a potential overpayment is or is not interest. In a supplemental opinion to *Estate of Bailly v. Commissioner*, 81 T.C. 949 (1983) (originally decided at 81 T.C. 246), we postponed entry of our earlier decision because of concern that section 6512(a) would bar a subsequent action by the taxpayer to obtain an estate tax deduction for interest accruing on tax liabilities.

In essence, we have already exercised jurisdiction over questions of interest, for if we were to find that respondent had incorrectly allocated too much of a section 6166A installment payment to interest, we could hold that the amount of interest deducted was too large. In so holding, we would be increasing the amount of "tax" overpaid. The theory which would permit our determination of the amount of interest in this setting is one which recognizes that it is essential to be able to consider all payments made until the time of the actual overpayment. To interpret the statute otherwise would specifically limit our ability to determine an overpayment and frustrate our con-gressionally conferred jurisdiction. The facts in this case present a situation where respondent agrees that petitioner-estate has no deficiency and, further, has reported too much tax on its estate tax return. In such a circumstance, "interest" payments made by the estate on the installments of estate tax which were finally determined not to be due, were not actually interest payments. Stated more directly, payments made before this Court's determination of a deficiency or overpay-ment cannot be considered to constitute tax or interest to the exclusion of this Court's jurisdiction.

*Development of the Case Law*

Respondent, without reference to the statutes, maintains that case law supports the argument that the Tax Court lacks jurisdiction over interest. Respondent's understanding of the case law is correct. The case law, however, developed more than 50 years ago and resolved the question by the expedient of restricting our jurisdiction short of the statutory grant.

The most complete presentation of the rationale for finding no jurisdiction where there was overpaid interest is found in *Capital Building & Loan Association v. Commissioner*, 23 B.T.A. 848 (1931), supplemental opinion 23 B.T.A. 1117 (1931), revd. on another issue 63 F.2d 462 (D.C. Cir. 1933). In that case,

deficiencies were initially determined for the taxpayer's 1924 and 1926 tax years. The parties later stipulated that there were no deficiencies for those years and that the taxpayer had actually overpaid its taxes. The taxpayer requested the Board to determine overpayments of tax and interest, which had been assessed and paid on the deficiency amounts. The Board stated that the controversy before it related "to the question as to whether the Board has jurisdiction to determine whether the amount of interest paid on a conceded overpayment of taxes is an overpayment." *Capital Building & Loan Association v. Commissioner, supra* at 849. The Board referred to section 284(e) of the Revenue Act of 1926, 44 Stat. 9, which is a predecessor to section 6512(b), and found that the overpayment referred to in the statute was "an overpayment of *tax*." (Emphasis in the original.) Reasoning that "The interest on the tax is not tax but is something in addition to the tax," the Board concluded that "The additions to the tax or additional amounts added to the tax are not the tax which is referred to in the statute which we can find has been overpaid." *Capital Building & Loan Association v. Commissioner, supra* at 849. Also see *Steubenville Bridge Co. v. Commissioner*, 11 T.C. 789 (1948) (the Tax Court, in finding an overpayment of tax, declared that it lacked jurisdiction to find an overpayment of interest where taxpayer had paid tax and interest on a deficiency barred by the statute of limitations). The 1926 Revenue Act was phrased similarly to section 6512(b). There was no compulsion to so restrictively read this language. This Court could have read the phrase "overpayment of tax" as part of the threshold necessary to be able to further enable the Tax Court "to determine the amount of such overpayment." There was no compelling reason to interpret the word "tax" to exclude additions to the tax or interest. There was, instead, reason to consider interest as part of an overpayment.

Prior opinions on this issue have focused on the Tax Court's role in providing a prepayment forum for taxpayers. They myopically see this purpose along with the statutorily limited jurisdiction as reasons to be extra conservative in determining the Tax Court's jurisdiction. But these opinions have failed to recognize that Congress has legislatively provided for the exceptional situation where, after a deficiency has been determined and the taxpayer has petitioned the Tax Court, an

overpayment results. Although there is no legislative history to assist us, it is hard to imagine that Congress could have intended to bifurcate an "overpayment" by limiting the taxpayer's refund to "tax" only. It is equally hard to imagine that an "overpayment" has a different meaning depending upon the forum. Either of those approaches would force some taxpayers to resolve a single tax controversy in two different forums. Strangely, those forced to unreasonably duplicate their costs and efforts would be the lucky ones because, as in this case, others would be barred from recovery of the interest portion of the overpayment due to their failure and/or inability to make a timely claim.

In *Commissioner v. Estate of Kilpatrick*, 140 F.2d 887 (6th Cir. 1944), affg. a Memorandum Opinion of this Court, a deficiency was determined in the estate's income tax liability for 1937. Kilpatrick's executor filed a petition with the Board of Tax Appeals to redetermine the deficiency. To prevent the accumulation of interest upon the deficiency, the taxpayer paid the amount of tax ($39,364.13) together with interest ($7,660.37).[7] The Board ignored the interest item in determining that there had been an overpayment of $39,364.13.

The Sixth Circuit pointed out that no portion or aspect of a deficiency determination by the Commissioner is assessable or fixed until this Court's decision becomes final. Accordingly, they treated the payment of interest as a "gratuitous" act on behalf of the taxpayer. Where, however, there is no deficiency to be found, we are left to sort out which of the payments, made prior to our decision, may have been overpaid. *Commissioner v. Estate of Kilpatrick, supra,* is distinguishable on the basis that it addresses an unassessed deposit, unlike the instant case which involves payment of assessed tax and interest.

In essence, the payments which the parties agree are overpaid merge to become the amount refundable known as the "overpayment." The use of the word "tax" in section 6512(b) could be equated with the word "principal." This

---

[7]It should be noted that the Internal Revenue Code prior to 1954 provided for interest upon interest. Recent amendments in TEFRA, Pub. L. 97–248, 96 Stat. 324, have again provided for compounded interest. This may increase the frequency with which this issue may arise because of taxpayers' concern about extra costs during the delay of litigation. Further, Congress has added situations where we may be required to decide whether increased interest may apply. Sec. 6621(d).

synonymous relationship is clearly illustrated where the estate tax liability is submitted by means of installment payments under section 6166A. Whether this Court redetermines which of those payments are interest or principal (tax), or the parties agree they are overpaid, they merge and become "principal" or "tax," for the original designation of those payments by the parties was not final, and this Court could have redetermined their character for purposes of a deduction or overpayment. See *Estate of Bahr v. Commissioner*, 68 T.C. 74 (1977), where interest on installment payments was analyzed for purposes of deductibility.

The unnecessarily restrictive approach of *Capital Building & Loan Association v. Commissioner, supra*, has not been meaningfully revisited for more than 40 years. Since that time, many factors have evolved which, in retrospect, do not reflect well upon the original approach. Moreover, other courts have readily included and treated interest as a part of an overpayment where the interest was paid prior to the event of overpayment.

In *Alexander Proudfoot Co. v. United States*, 197 Ct. Cl. 219, 454 F.2d 1379 (1972), the U.S. Court of Claims stated that deficiency interest assessed and collected (paid) assimilates into the tax. The Government argued, and the court agreed, that this pre-notice interest is a part of an overpayment and should be sought in a claim for refund. The court stated that—

The Code's design for such interest is to assimilate it to the tax itself so that the taxpayer who pays both * * * can and should proceed to seek to recover both together through one proceeding. For a long time, deficiency interest has been so closely braided to principal that it has been deemed an integral part of the tax. That is plainly a major purpose of § 6601(f)(1) * * * which follows many predecessors with the same aim. The hair is to go with the hide. [*Alexander Proudfoot Co. v. United States, supra* at 1382.]

Considering the overcrowded dockets in most Federal courts, we cannot be insensitive to opportunities to avoid unnecessary litigation. It appears that it is now appropriate to retrace our steps and retract our overly conservative position by reversing prior precedent, to the extent that those opinions preclude this Court from finding payments of interest as part of an "overpayment."[8] Thus, we conclude that we have jurisdiction to

---

[8]In analogous situations concerning statutes enacted after the predecessor of sec. 6512 there

consider interest as a part of an overpayment in this case and to that limited extent, *Capital Building & Loan Association v. Commissioner, supra,* and *Steubenville Bridge Co. v. Commissioner, supra,* are overruled.

*Allocation of Payment and Evidentiary Issue*

Petitioner questions respondent's allocation of installment payments between tax and interest. As part of this issue, petitioner has objected to the materiality and relevancy of a transcript of petitioner-estate's tax account, as maintained by respondent. The Transcript of Account was stipulated to by the parties as Exhibit 2-B and the document is a transcript of a business record maintained by respondent. The transcript merely reflects the transactions that occurred regarding petitioner-estate's tax account with respondent. The transcript is relevant and material to the extent that it reflects respondent's record of various events and transactions and, accordingly, petitioner's objection is overruled. Respondent's record of these transactions merely reflects entries characterized by respondent. Such records are not dispositive of the issues before this Court.

Respondent has not addressed the method of determining the amount of "pre-notice" interest (interest assessed and collected at the time of the overpayment), since it was respondent's position that this Court lacked jurisdiction to consider any questions of interest in connection with an overpayment. Petitioner seeks to have us ignore the original allocation of installment payments into tax and interest. We, however, are unable to determine that respondent's original allocations were improper.

If a taxpayer makes a voluntary payment without directing application of funds, the Service may make whatever allocation it chooses. *Muntwyler v. United States,* 703 F.2d 1030,

---

have been specific provisions for interest and additions to tax. Sec. 6861(c). The situations are ones where the tax and interest must necessarily be assessed and/or collected prior to our consideration of the case. Conceptually, the jeopardy assessment situation is the same as overpayments including tax and interest because the payment occurs before we are able to render an opinion. In the jeopardy assessment situations, there is no hesitancy in dealing with interest questions and no logistic problems since, as here, the payments occur prior to the determination of a deficiency or overpayment. *Papa v. Commissioner,* 55 T.C. 1140 (1971); *Riss & Co. v. Commissioner,* 45 T.C. 230 (1965). Transferee cases, similarly, require the determination of the amount, rate, and starting date of interest on transfers. *Estate of Stein v. Commissioner,* 37 T.C. 945, 959–960 (1962). These instances should dispel any question about this Court's ability to enter a decision concerning interest in connection with tax.

1032 (7th Cir. 1983). In *Amos v. Commissioner*, 47 T.C. 65, 69 (1966), this Court defined an involuntary payment of taxes as "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." Since the circumstances described in *Amos* are absent here, we find that the installment payments made by petitioner were voluntary. Nothing in the record before us indicates that petitioner ever directed application of the payments between principal and interest; on the contrary, the record reflects that the estate accepted the allocations made by respondent. Petitioner received bills from the Service for the installment payments that apprised it of the allocations between tax and interest proposed by respondent. Thus, we conclude that respondent properly allocated the original payments as between principal and interest.

## Amount of the Overpayment

Our holding that the term "overpayment" includes assessed and paid interest at the time of overpayment and that respondent's original allocations are proper would normally leave the parties with the responsibility of calculating the correct amount of the overpayment under Rule 155 of this Court's Rules of Practice and Procedure.

Interest upon an overpayment begins to run "from the date of the overpayment." Sec. 6611. Until the time of the overpayment, any tax, interest, or additions to tax, paid in accordance with an assessment, is a part of the "overpayment." Generally, an "overpayment," as a word of art, requires payment with a return or in response to an assessment. *Rosenman v. United States*, 323 U.S. 658 (1945). Although *Rosenman* continues to have vitality, it has not been woodenly applied. *Rosenman* has been distinguished in situations where a taxpayer makes payments based upon a bona fide estimate of an uncollected tax liability. *Charles Leich & Co. v. United States*, 165 Ct. Cl. 127, 329 F.2d 649 (1964); *Northern Natural Gas Co. v. United States*, 173 Ct. Cl. 881, 354 F.2d 310 (1965). The facts in this case come within *Rosenman* because petitioner paid the $1,208,362.50 pursuant to the amount returned by the estate.

Naturally, an overpayment occurs when "any payment [is] in excess of that which is properly due." *Jones v. Liberty Glass*

*Co.*, 332 U.S. 524, 531 (1947). The tax must be paid in full as the prerequisite to the commencement of a refund suit. *Flora v. United States*, 357 U.S. 63 (1958). Payment of assessed interest, however, is not a prerequisite to commencement of a refund suit. *Flora v. United States*, 362 U.S. 145 (1960); *Kell-Strom Tool Co. v. United States*, 205 F. Supp. 190 (D. Conn. 1962). As to the tax payable in installments, if a taxpayer has "overpaid" an installment, the "overpayment" would be credited to any unpaid installments. Sec. 6402. An overpayment of an installment is not an "overpayment of tax" until the entire amount of the tax has been paid. *Blair v. Birkenstock*, 271 U.S. 348 (1926); *Flora v. United States*, 357 U.S. 63 (1963).

The parties in this case have agreed that the correct estate tax liability should have been $938,215.07. Under any theory of allocation of payments between tax and interest, the overpayment of tax must have occurred on February 12, 1982. Normally, the parties would compute the unpaid portions of the correct tax liability when each installment is made. In this manner, the correct amount of an overpayment, which includes assessed and collected tax and interest, can be reconstructed. Due to the agreed reduction in the amount of estate tax due, the amount of interest due with each installment would have been reduced and, accordingly, the amount of each payment attributable to the tax (principal) would have increased, further reducing the interest and increasing the principal in subsequent payments. See sec. 20.6166A–1(f), Estate Tax Regs. To the extent of these determinations, the amounts of overpaid estate tax would have increased and this Court would have exercised no more jurisdiction than we have in other similar situations. See *Estate of Papson v. Commissioner*, 81 T.C. 105 (1983).

Petitioner has submitted and respondent has stipulated to a computation of the amount of an overpayment inclusive of assessed and collected tax and interest thereby obviating the need for a computation under Rule 155. Petitioner's computation of the $141,224.63 overpayment is based upon the facts agreed to by the parties.

Further, the parties have effectively anticipated the circuitous nature of the computation occasioned by the deduction of interest on estate tax where the tax is paid in installments by agreeing to deductibility of interest on the estate's Form 1041

after a time certain in 1980, rather than factoring such amounts into the reduction of estate tax installment payments. The payment requirements and time limits specified in sections 6511 and 6512 have been met. The dates of payment for purposes of any subsequent interest computations once our opinion becomes final have been stipulated by the parties and are set forth as findings in this opinion.

*Decision will be entered for the petitioner.*

Reviewed by the Court.

STERRETT, SIMPSON, GOFFE, WILBUR, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, and WRIGHT, *JJ.*, agree with this opinion.

JACOBS, *J.*, did not participate in the consideration of this case.